1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9            FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 MICHAEL ARAM, INC., | Case No. 2:22-cv-01257-SSS-MRWx |
| 12                          Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| 13 | **PLAINTIFF'S FIRST AMENDED** |
| 14             v. | **COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER** |
| 15 | **VENUE [DKT. 26] AND** |
| 16 CLASSIC TOUCH DÉCOR, INC., *et al.*, | **VACATING THE HEARING ON THIS MOTION** |
| 17 | |
| 18                          Defendants. | |
| 19 | |
| 20 | |

21
22
23
24
25
26
27
28

Before the Court is Defendant Classic Touch Décor, Inc.'s ("Classic Touch") Motion to Dismiss Plaintiff Michael Aram, Inc.'s ("Aram") First Amended Complaint (FAC) or, in the alternative, to Transfer Venue (the "Motion"). [Dkt. 26]. The Motion is fully briefed and ripe for consideration. A hearing on this Motion is scheduled for September 16, 2022. The Court deems this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. For the following reasons, Classic Touch's Motion is DENIED and the hearing is VACATED.

## I.  BACKGROUND

### A.    Relevant Facts

Michael Aram is a painter, sculptor, art historian, and owner of ARAM, a store where Michael Aram sells his artwork. [Dkt. 18 at 3–4]. Aram is incorporated under the laws of New Jersey and its principal place of business is in California. [Dkt. 18 at 2, ¶5]. In October 2020, Aram moved its business to Florida and moved its distribution center to North Carolina. [Dkt. 40-1 at 2, ¶1]. Aram's three flagship stores are located in California (West Hollywood), Florida (Bal Harbour), and New York (New York City). [Dkt. 40-1 at 2, ¶5]. The products Aram sells are largely inspired by nature and often present artistic versions of plant life as home décor. [Dkt. 18 at 4, ¶12]. Aram's products have been featured in magazines such as *Vanity Fair* and *Elle Décor*. [Dkt. 18 at 4, ¶14]. Aram's products have also been sold in stores such as Neiman Marcus, Bloomingdales, Macy's, Saks Fifth Avenue, and Bergdof Goodman. [Dkt. 18 at 4, ¶14].

Classic Touch is a home goods store that is incorporated in New York and has its principal place of business in New York. [Dkt. 18 at 2, ¶5]. Classic Touch sells its products direct-to-consumers on its website, in addition to selling its products in stores such as Macy's, Amazon, Target, Bed Bath & Beyond, Faire, and Houzz. [Dkt. 18 at 4, ¶14]. Classic Touch does business in California as

1    well.  [Dkt. 18 at 2, ¶5].

2    **B.    Procedural Background**

3           On February 23, 2022, Aram filed its initial complaint against Classic

4    Touch for copyright infringement and vicarious and/or contributory copyright

5    infringement.  [Dkt. 1].  On April 27, 2022, Classic Touch filed its first motion to

6    dismiss or, in the alternative, motion to transfer venue.  [Dkt. 16].  On May 12,

7    2022, Aram filed its FAC in response to the motion to dismiss.  [Dkt. 18].  On

8    May 16, 2022, Classic Touch filed its reply to Aram's FAC alleging it was

9    nonresponsive to Classic Touch's motion to transfer argument.  [Dkt. 19 at 2–4].

10   On May 17, 2022, Aram filed its opposition contesting Classic Touch's argument

11   that it conceded transfer of venue.  [Dkt. 20].  On May 27, 2022, the Court denied

12   Classic Touch's motion as moot.  [Dkt. 29].

13   **C.    Designs at Issue**

14          Design A is a centerpiece platter in the shape of a pinnate[1] palm leaf, which

15   Aram alleges Classic Touch's Product A copied.  [Dkt. 18 at 5–6].  Design B is a

16   double compartment dish in the shape of two ginkgo leaves, which Aram alleges

17   Classic Touch's Product B copied.  [Dkt. 18 at 6–7].  Design C is a bread plate in

18   the shape of a sago palm leaf, which Aram alleges Classic Touch's Product C

19   copied.  [Dkt. 18 at 8–9].  Aram further alleges that each of his designs have been

20   registered accordingly.  [Dkt. 18 at 6–9].

21          Design A is a pinnate palm leaf with exactly eleven (11) leaflets[2] extending

22   outward from each side of the pam leaf's rachis.[3]  [Dkt. 18 at 5–6].  Each leaflet

23   has a line imitating a leaf's vein running down the center.  [Dkt. 18 at 5–6].  The

24   
_____

25   [1] A pinnate leaf is one that "[resembles] a feather especially in having similar
     parts arranged on opposite sides of an axis like the bards on the rachis of a
26   feather."  Pinnate Definition & Meaning - Merriam-Webster.

     [2] A leaflet is "one of the divisions of a compound leaf."  Leaflets Definition &
27   Meaning - Merriam-Webster.

28   [3] A rachis is "an extension of the petiole of a compound leaf that bears the
     leaflets."  Rachis Definition & Meaning - Merriam-Webster.

leaflets are each folded backwards and upwards to land on the leaflet preceding it.  At the top of the palm leaf, the leaflets are folded to form a point.  [Dkt. 18 at 5–6].  Design A is finished in a brassy gold color.  [Dkt. 18 at 5–6].  Similarly, Product A is a palm leaf with exactly eleven (11) leaflets folded backwards and upwards, landing in the center of the leaflet preceding it.  [Dkt. 18 at 5–6].  Each leaflet extends from each side of the rachis and includes a line imitating a leaf's vein running down the center of each leaflet.  [Dkt. 18 at 5–6].  Unlike Design A, the lines on each leaflet of Product A are more prominent and it is finished in a bright yellow-gold color.  [Dkt. 18 at 5–6].

Design B has two ginkgo leaves intertwined at the stem.  [Dkt. 18 at 6–7]. The left ginkgo leaf's stem arches upwards from the petiole[4] and extends over the right ginkgo leaf's stem.  [Dkt. 18 at 6–7].  The right ginkgo leaf's stem extends from the petiole at a slight curve.  [Dkt. 18 at 6–7].  Both stems are of medium thickness with round flat ends.  [Dkt. 18 at 6–7].  The ginkgo leaves are concave and connected at one side.  [Dkt. 18 at 6–7].  The ginkgo leaves have rippled edges and the entire piece is finished in gold.  [Dkt. 18 at 6–7].  Similarly, Product B has two ginkgo leaves intertwined at the stem.  [Dkt. 18 at 6–7].  The left ginkgo leaf's stem arches upwards from the petiole and extends over the right ginkgo leaf's stem.  [Dkt. 18 at 6–7].  At the intersection of the stems, the stems are somewhat flattened.  [Dkt. 18 at 6–7].  The right ginkgo leaf's stem extends from the petiole at a slight curve.  Both stems are of medium thickness with round flat ends.  [Dkt. 18 at 6–7].  The ginkgo leaves are attached on the side, slightly concave, and rippled along the edges.  [Dkt. 18 at 6–7].  The piece is finished in silver.  [Dkt. 18 at 6–7].

Design C is a single sago palm leaf.  [Dkt. 18 at 8–9].  At the base of the palm leaf are two small protrusions and, further up from the protrusions, several

---

[4] A petiole is "a slender stem that supports the blade of a foliage leaf."  Petiole Definition & Meaning - Merriam-Webster.

leaflets extend all around the rachis. [Dkt. 18 at 8–9]. Between groups of leaflets are various gaps and spacing. [Dkt. 18 at 8–9]. The overall piece is finished in a brassy gold color. [Dkt. 18 at 8–9]. Product C is a pair of sago palm leaves. [Dkt. 18 at 8–9]. The largest sago palm leaf has two small protrusions at the base and, further up from the protrusions, several leaflets extend all around the rachis. [Dkt. 18 at 8–9]. Similar to Design C, there are various gaps and spacing between the leaflets. [Dkt. 18 at 8–9]. The piece is finished in a bright yellow-gold color. [Dkt. 18 at 8–9].

## II. Legal Standard

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Subject to Rule 12(b)(6), the Court reviews the complaint for facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level. . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . " *Twombly*, 550 U.S. at 555 (citations and footnote omitted).

In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and

-5-

conclusions." *Twombly*, 550 U.S. at 555.  Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004).

## III.  DISCUSSION

Classic Touch argues the Court should dismiss Aram's FAC because it fails to plead a complete list of the alleged protectable elements of the designs at issue and fails to plead substantial similarity.  [Dkt. 26 at 16–26].  In the alternative, Classic Touch argues the Court should transfer this case to the Eastern District of New York (E.D.N.Y.).  [Dkt. 26 at 26–33].  The Court addresses each issue below.

### A.  Copyright Claims

In *Skidmore v. Led Zeppelin*, the Ninth Circuit clarified its three-prong test for copyright infringement.  To prove his case, a plaintiff must establish (1)

"ownership" (that he possesses a valid copyright in the work allegedly infringed upon); (2) "copying" (that defendant copied his protected work); and (3) "unlawful appropriation."  952 F.3d 1051, 1064 (9th Cir. 2020).  He must satisfy all three prongs to prevail on his claim of infringement.

In the absence of direct evidence, copying may be established by evidence (a) that defendant had access to the plaintiff's work *and* (b) of "probative similarities" between plaintiff's and defendant's works.  Probative similarities "may be based on the overlap of unprotectable as well as protectable elements" of two works.  *Skidmore*, 952 F.3d at 1064.

The final prong, unlawful appropriation, requires the plaintiff to demonstrate "substantial similarity" between the works at issue.  Substantial similarity is a separate element of a copyright claim, distinct from the merely probative similarities that may be used to establish copying.  In evaluating substantial similarity, the factfinder must limit its inquiry to "whether the *protectible elements, standing alone,* are substantially similar and [must] *disregard the non-protectible elements*."  *Id.* at 1070 (internal citations and quotation marks omitted, emphasis added).  The plaintiff must demonstrate substantial similarity under both the "extrinsic" and "intrinsic" test.  The "extrinsic" test compares the objective similarities of specific expressive elements in the two works.  *Id.* at 1064.  The "intrinsic" test evaluates "similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." *Id.*  As the intrinsic test is reserved for the jury, the Court only considers the extrinsic test at the pleading stage. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018) ("Only the extrinsic test's application may be decided by the court as a matter of law. . .so that is the only test relevant in reviewing the district court's ruling on a motion to dismiss.").

1    There are three steps in the extrinsic test: (1) identifying which shared

2    elements of the plaintiff's work are protectable; (2) determining the breadth of

3    copyright protection of those protectable elements; and (3) comparing the

4    identified protectable elements to the corresponding elements in the defendant's

5    work to assess the similarity. *See Tomelleri v. DMB Associates, Inc.*, No. 2:20-

6    cv-01035-TLN-KJN, 2021 WL 4461651, 2021 WL 4461651, at *2 (E.D. Cal.

7    Sept. 29, 2021) (citing *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir.

8    2018)).

9        1.    *Protectable Elements*

10   As there is no argument that Aram is not the owner of the designs, the

11   Court begins with the question of whether Aram sufficiently alleged any

12   protectable elements. Classic Touch argues Aram failed to plead a "clear list of

13   the allegedly protectable elements of its designs. . ." [Dkt. 26 at 16]. Aram

14   argues there is no requirement that it plead a specific list of protectable elements

15   and, even if there is such a requirement, it has sufficiently plead its protectable

16   elements. [Dkt. 40 at 11–14, 19–22]. For the following reasons, the Court

17   agrees with Aram.

18   As an initial matter, the Court finds that Aram has sufficiently identified

19   the protectable elements at issue. Unlike in *Muromura v. Rubin Postaer and*

20   *Associates*, No. CV 12-092632 DDP (AGRx), 2015 WL 1728324, at *3 (C.D.

21   Cal. Apr. 15, 2015), where plaintiff merely provided a non-exhaustive list of

22   "descriptors and elements characterizing their works," Aram has provided a list

23   of features it alleges Classic Touch's products have copied [Dkt. 18 at 5–9].

24   These features are reiterated in Aram's brief opposing the Motion. [Dkt. 40 at

25   19–22]. It is clear from the FAC and the briefing that Aram has identified the

26   specific elements at issue and that Classic Touch is aware of those elements.

27   [Dkt. 26 at 20–26]; *see Perfect 10, Inc. v. Cybernet Ventures, Inc., et al.*, 167 F.

28   Supp. 2d 1114, 1120 (C.D. Cal. 2001) (noting that copyright infringement

complaints need not be pled with particularity).  Accordingly, Aram has provided a list of elements it alleges are either protectable individually or in combination.

Based on the Court's objective observations, Aram's Design A and Classic Touch's Product A seem to share the following elements: (1) the number of leaflets; (2) the backwards and upwards folding of the leaves to lay in the center of the leaf preceding it; (3) the pointed tip of the leaf; and (4) the shape and outline of the pieces.  [Dkt. 18 at 6].  Aram's Design B and Classic Touch's Product B seem to share the following elements: (1) a stem that arches up from the petiole and crosses over another stem; (2) rippled edges of the ginkgo leaf; (3) thick stems with round flat ends; and (3) a stem that curves out from the petiole.  [Dkt. 18 at 7].  Aram's Design C and Product C seem to share the following elements: (1) two small protrusions at the base of the leaf; and (2) various spacing and gaps between the leaflets.  [Dkt. 18 at 9].

Elements found in nature may not be protected individually because they are "first expressed in nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003).  The two exceptions to this general principle are:

> (1) that artists may protect the unique expression of an element in
> nature if such variation is an original artistic choice; and
>
> (2) that an original selection, coordination, and arrangement of
> unprotectable natural elements may be protectable expression.

*Tomelleri v. DMB Associates, Inc.*, No. 2:20-cv-01035-TLN-KJN, 2021 WL 4461651, at *3 (E.D. Cal. Sept. 29, 2021).  For a combination of unprotectable elements to be eligible for copyright protection, the elements must be "numerous enough and their selection and arrangement original enough" that the combination constitutes an original work product.  *Satava*, 323 F.3d at 811.

Each of Aram's designs are artistic expressions of naturally existing figures: leaves.  Naturally, Aram cannot claim copyright protection to the natural aspects of plant physiology.  *See, e.g.*, *Satava*, 323 F.3d at 810 ("Satava may not prevent others from copying aspects of his sculptures resulting from either jellyfish physiology or from their depiction in the glass-in-glass medium."); *see also Tomelleri*, No. 2:20-cv-01035-TLN-KJN, 2021 WL 4461651 at *3.  However, despite Classic Touch's argument that the majority of Aram's designs are based in "plant physiology" or other standard elements [Dkt. 26 at 17, lines 16–18], Aram's expression of various leaves cannot be considered stock representations.  *Satava*, 323 F.3d at 810 ("[E]xpressions that are standard, stock, or common to a particular subject matter. . .are not protectable under copyright law.").  For example, Aram's specific folding of the leaflets and creation of a point on a leaf that otherwise does not have one,[5] is a more than trivial variation on the leaf's shape.  [Dkt. 18 at 6]; *see, e.g.*, *Satava*, 323 F.3d at 810 ("There must be something more than a 'merely trivial' variation, something recognizably the artist's own." (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 489 (9th Cir. 2000)).   Moreover, the way one of the stems of the ginkgo leaves arches upward from the petiole and curves down and across the stem [Dkt. 18 at 7] is not a natural expression of how ginkgo leaves cross each other.[6]  *Compare with Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (holding that "a depiction of two dolphins crossing under sea, one in a vertical posture and the other in a horizontal posture" is not protectable).

---

[5] Pinnate leaves like the kind Aram's work is based on "have leaflets entirely separated from each other that are attached perpendicularly to the rachis," and therefore lack a point at the end.  Palm Leaf Structure - Gardening Solutions - University of Florida, Institute of Food and Agricultural Sciences (ufl.edu).

[6] *See, e.g.*, ginkgo leaves crossing at the stem - Search (bing.com)

Accordingly, the Court finds that Aram has plausibly alleged a combination of elements that are protectable.

### 2.   Breadth of Copyright

Classic Touch argues Aram is entitled to only "thin" copyright protection. [Dkt. 26 at 19].  Aram argues the designs are entitled to "broad" protection because the designs are "artistic renderings."  [Dkt. 40 at 15, lines 5–10].

Based on the range of expression involved, a work can be entitled to either "broad" or "thin" copyright protection.  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010).  Where there is a wide range of expression, the copyright protection is "broad," and a work will infringe if it is substantially similar to the copyrighted work.  *Id.*   Where there is a narrow range of expression, the copyright protection is "thin," and a work will infringe if it is "virtually identical" to the copyrighted work.  *Id*. at 914 ("[F]or example, there are gazillions of ways to make an aliens-attack movie. . .[and] there are only so many ways to paint a red bouncy ball on [a] blank canvas.").

The scope of copyright protection for realistic depictions of nature is narrow.  *See Satava*, 323 F.3d at 812.  "This is because realistic depictions necessarily require that the author copy what is already found in nature, which means that the depiction is no longer original." *L.A. Printex Industries, Inc. v. T.J. Maxx of Cal., LLC*, No. CV 09-5969 PA (FFMx), 2010 WL 11519577, at *3 (C.D. Cal. Jan. 11, 2010).  Although Designs A and B are identifiable as different kinds of leaves, they are not realistic depictions.  The leaves are finished in brassy gold color, which is not natural for leaves.  [Dkt. 18 at 5–9]. The leaflets on Design A are folded in a way that is unnatural for pinnate leaves, making it almost unidentifiable as a pinnate leaf.  [Dkt. 18 at 6].  The ginkgo leaves on Design B are concave and almost bowl-like in a way that is unnatural. [Dkt. 18 at 7].  Additionally, the way one of the stems in Design B arches upward from the petiole is inconsistent with the way ginkgo stems operate in

1   nature.  [Dkt. 18 at 7].  Accordingly, Aram's designs are not merely realistic

2   depictions of nature and, therefore, the designs are entitled to broad copyright

3   protection.  *L.A. Printex Industries, Inc.*, No. CV 09-5969 PA (FFMx), 2010

4   WL 11519577, at *3 (finding plaintiff's depictions of butterflies and roses were

5   not "realistic depictions of natural objects" because they were abstract and

6   contained details not found in nature).

7       3.   *Substantial Similarity*

8       Aram's designs are entitled to broad copyright protection and therefore it

9   need only show the two works are substantially similar.  *See Mattel, Inc. v.*

10  *MGA Entertainment*, 616 F.3d 904, 913–14 (9th Cir. 2010); *see also L.A.*

11  *Printex Industries, Inc.*, No. CV 09-5969 PA (FFMx), 2010 WL 11519577, at

12  *3.  Substantial similarity is evaluated using both an extrinsic and intrinsic test.

13  *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).   However, "a

14  court may not resolve the intrinsic test at this procedural stage."  *DuMond v.*

15  *Reilly*, No. CV 19-8922-GW-AGRx, 2021 WL 733311, at *6 (C.D. Cal. Jan. 14,

16  2021).  Accordingly, the Court need only determine whether Aram's pleading

17  sufficiently alleges the two works share objective similarities of specific

18  expressive elements.  *Skidmore*, 952 F.3d at 1064.

19      Because Aram's Designs A, B, and C seem to share a number of

20  protectable elements with Classic Touch's Products A, B, and C, the Court finds

21  that Aram has sufficiently alleged objective similarities.  *See supra* III.A.1.

22  Accordingly, the extrinsic test is satisfied.

23  **B.   Transfer of Venue**

24       In the alternative, Classic Touch argues this action should be transferred

25  to E.D.N.Y. because Aram previously "consented to [the] transfer by failing to

26  oppose" Classic Touch's original motion to dismiss, the action could have been

27  brought in E.D.N.Y., and the interests of convenience and justice are served by

28  a transfer.  [Dkt. 26–33].  Aram argues transfer is improper because Aram did

not consent to a transfer and the interests of convenience and justice are not served by the transfer.  [Dkt. 40 at 23–28].

A district court may, at its discretion, transfer a case to any district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  A district where the action "might have been brought" is one having subject matter jurisdiction over the controversy, where defendants are subject to personal jurisdiction, and where venue is proper.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  In evaluating motions to transfer venue, the Court considers such factors as: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).  Additional factors include: the location where the relevant agreements were negotiated and executed, the state that is most familiar with the governing law, the respective parties' contacts with the forum, the contacts relating to plaintiff's cause of action in the chosen forum, and differences in the cost of litigation in the two forums.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).  The moving party has the burden of proving that the "convenience of the parties and the witnesses" and the "interest of justice" requires transfer to another district.  *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  A transfer will not be ordered if the result is merely to shift the inconvenience from one party to another.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

First, the Court is unpersuaded by Classic Touch's argument that Aram consented to its transfer request in its first motion to dismiss.  After Classic Touch filed its first motion to dismiss [Dkt. 16] , Aram filed its FAC [Dkt. 18].

-13-

1    Classic Touch then filed a reply arguing Aram failed to oppose the motion to
2    transfer and therefore consented.  [Dkt. 19].  Aram filed a response clearly
3    contesting Classic Touch's consent argument.  [Dkt. 20].  The Court then denied
4    Classic Touch's motion as moot pursuant to the FAC.  [Dkt. 29].  As such, the
5    record is clear that Aram contested the motion to transfer and the Court properly
6    denied Classic Touch's original motion.

7         Next, the Court considers whether any factors support transfer.  Because
8    this action could have been brought in E.D.N.Y.[7], the Court balances three
9    specific factors: (1) the convenience of the parties; (2) the convenience of the
10   witnesses; and (3) the interest of justice.  *Catch Curve, Inc. v. Venali, Inc.*, No.
11   CV 05-04820 DDP (AJWx), 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27,
12   2006).  "The convenience of witnesses is often the most important factor in
13   determining whether a transfer of venue is appropriate."  *George & Company,*
14   *LLC v. Imagination International Corporation*, No. CV 10-0639 GAF (Ex),
15   2010 WL 11549387, at *3 (C.D. Cal. Apr. 28, 2010).

16        Classic Touch is unable to meet its burden of proving convenience to
17   parties.  *Commodity Futures Trading Commission*, 611 F.2d at 279.  Although
18   Aram has one store in New York, it is incorporated in New Jersey and its
19   principal place of business is in California—neither of which is in E.D.N.Y.
20   Accordingly, Aram has established ties to California and would potentially be
21   inconvenienced by a transfer to a district where it now has less of a connection.
22   *See, e.g.*, *Incredible Features, Inc. v. BackChina, LLC*, 476 F. Supp. 3d 1028,
23   1034 ("[C]ourt should not order a transfer when doing so would merely shift the
24   burdens of litigation from one party to another.").

25        Classic Touch further fails to show how transfer would convenience the
26   witnesses and be in the interest of justice.  Regarding convenience to witnesses,

27
28   ───────────────
     [7] Classic Touch's principal place of business is in Brooklyn, New York [Dkt. 18
     at 2, ¶5], and therefore E.D.N.Y. would have personal jurisdiction over it.

-14-

Classic Touch merely alleges that its third-party distributors are "either based in New York or have strong ties to New York."  [Dkt. 26 at 32].  There is no articulation that those companies lack offices or agents in California, would be unable to engage virtually, or would otherwise be significantly hindered by the case proceeding in this forum.  Moreover, a transfer would not further interests of justice.  Classic Touch's sole argument here is that E.D.N.Y. would have more interest in the dispute because most of its conduct occurred there.  [Dkt. 26 at 33].  However, because Aram has significant business connections in California [Dkt 40-1 at 2, ¶¶5–6], Classic Touch does business in California [Dkt. 18 at 3], and many of Classic Touch's third-party distributors do business in California [Dkt. 40 at 26–27], this forum has significant interest in the dispute.

Accordingly, the Court finds that a transfer of venue would not convenience the parties, convenience the witnesses, and be in the interest of justice.

## IV.  CONCLUSION

It is therefore ORDERED that Defendant Classic Touch's Motion to Dismiss, or in the alternative, to Transfer Venue [Dkt. 26] is DENIED.  Further, the Motion Hearing scheduled for September 16, 2022 is hereby VACATED.

**IT IS SO ORDERED.**

Dated: August 29, 2022

_____
SUNSHINE S. SYKES
United States District Judge

-15-